**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| SAMSON RESOURCES CORPORATION, *et al*., | : | Case No. 15-11934-BLS |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| _____ | : | |
| | : | |
| DIANE S. JONES, | : | |
| | : | Civ. No. 20-725-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| SAMSON RESOURCES CORPORATION, | : | |
| | : | |
| Appellee. | : | |

_____

**<u>MEMORANDUM</u>**


Diane S. Jones, Waldorf, Maryland, *pro se* appellant.


John H. Knight, Amanda R. Steele, Robert C. Maddox, Garrett S. Eggen, Richards Layton & Finger, P.A., Wilmington, Delaware, attorneys for Samson Resources II, LLC, for itself and the Reorganized Debtors.


March 29, 2021

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Pending before this Court is the appeal filed by *pro se* appellant Diane S. Jones from the

Bankruptcy Court's May 26, 2020 Memorandum Order.  (D.I. 1-1, Adv. D.I. 11)[1] ("2020

Order") The 2020 Order dismissed Appellant's adversary proceeding complaint (Adv. D.I. 1)

("2019 Complaint") with prejudice on the basis of res judicata, collateral estoppel, and a plan

injunction.  Also pending before the Court is the Appellee's Motion to Dismiss Frivolous Appeal

filed by the Reorganized Debtor ("Samson") (D.I. 9).  For the reasons set forth below, the 2020

Order is affirmed, and the motion to dismiss is dismissed as moot.

**I.      BACKGROUND**

**A.      The 2017 Decision**

On September 16, 2015, Samson and certain affiliates ("Debtors") filed voluntary

petitions under Chapter 11.  The Debtors were an onshore oil and gas exploration and production

company that owned royalty and working interests in various oil and gas leases.  From

November 17, 2015 through January 26, 2016, Appellant and eleven heirs of Randolph Parker

("Parker Heirs") filed proofs of claim against the Debtors asserting $100 million each in

damages and alleging that the Debtors had engaged in fraud, deception, and theft, had failed to

pay hydrocarbon royalties from a 25-acre tract in Rusk County, Texas in which Appellant and

her family held a documented interest, and had failed to pay Appellant and her family members

hydrocarbon royalties from another 69-acre tract in which they held no documented interest.

On February 13, 2017, the Bankruptcy Court entered an order confirming Samson's plan

---

[1] The docket of the Chapter 11 cases, captioned *In re Samson Resources Corp., et al*., Case No.
15-11934 (BLS) (Bankr. D. Del.), is cited herein as "B.D.I. __," and the docket of the adversary
proceeding, captioned *Jones v. Samson Resources Corp.,*, Adv. No. 19-50381 (BLS) (Bankr. D.
Del.), is cited herein as "Adv. D.I. __."

of reorganization (B.D.I. 2019) (the "Confirmation Order").  The plan contained a standard

discharge and injunction.  (*See* B.D.I. 2019-1, Plan Art. VIII.B, VIII.H).  On March 1, 2017, the

plan was substantially consummated and the Debtors emerged from Chapter 11 (the "Effective

Date").  (*See* B.D.I. 2070).  On February 28, 2017, the Reorganized Debtors filed an amended

omnibus objection to claims, seeking to disallow the Parker Heir Claims in their entirety on the

grounds that none of the Parker Heir Claims made a *prima facie* showing that the Parker Heirs

had been underpaid royalties or owned royalty interests in any lands beyond the 25-acre tract in

Rusk County, Texas (B.D.I. 2060) (the "Objection").  Certain of the Parker Heirs filed responses

to the Objection.  (B.D.I. 2045, 2065, 2067, 2143, 2144, 2148, 2151, 2156, 2162, 2184, 2185,

2186).  The Bankruptcy Court held a two-day trial on the issue of whether the Parker Heir

Claims should be disallowed.

On June 15, 2017, the Bankruptcy Court issued its opinion disallowing the Parker Heir

Claims (B.D.I. 2436), together with an Order denying all relief sought by the Parker Heirs

(B.D.I. 2437) ("2017 Order").   *See In re Samson Resources Corp.*, 569 B.R. 605 (Bankr. D. Del.

2017) ("2017 Decision").  In the 2017 Decision, the Bankruptcy Court carefully examined the

Parker Heir Claims, making detailed factual findings with respect to underlying gas and mineral

lease ("Walling Lease") (*see id*. at 610-12); the Parker Heirs' fractional royalty interests in the

25-acre tract and that of other owners (*see id.* at 612-13); and the Parker Heirs' alleged interests

in the additional 69-acre tract (*id*. at 613-14).  The Bankruptcy Court then undertook a careful

analysis of each of the Parker Heirs' arguments in support of their claims.  (*See id*. at 614-24).

The 2017 Decision determined that: the Walling Lease had not terminated (as the Parker Heirs

had alleged), that it remained in full force and effect, and that it allowed for pooling of the

mineral interests (*see id*. at 616-18); the Parker Heirs had failed to establish ownership of any

royalty interests in the separate tract (*see id*. at 618-19); the division orders executed by the

Debtors and the Parker Heirs were binding on the Parker Heirs, and thus the Parker Heirs had

waived any right to subsequently claim that larger royalty payments were owed (*see id*. at 619-

21); Appellant's grandfather, Randolph Parker, transferred one-half of his royalty interest to

National Locater, and that the Debtors have complied with the terms of the royalty transfer to

National Locater (*see id.* at 621-22); the Debtors have paid the Parker Heirs their royalty

payments consistent with the provisions of the Walling Lease and the Parker Heirs had failed to

establish any underpayment of royalties (*see id*. at 622-24).

      Appellant appealed from that decision, but her notice of appeal was untimely.  Thus, I did

not have jurisdiction, and I dismissed the appeal.  *Jones v. Samson Resources Corp. (In re*

*Samson Resources Corp.)*, 2017 WL 4783291 (D. Del. Oct. 23, 2017).  Appellant then went to

the Court of Appeals, which affirmed.  *In re Samson Resources Corp*., 734 F. App'x 177 (3d Cir.

2018).  On February 25, 2019, the United States Supreme Court denied certiorari.  *Jones v.*

*Samson Resources Corp*., 139 S.Ct. 2172 (2019).

      While the appeal was pending, Appellant sought to introduce additional evidence with

respect to her alleged right to payment for the partial mineral royalty interest that her grandfather

had sold to National Locater.  The Parker Heirs obtained an Order for Default Judgment in the

District Court of Rusk County, Texas against National Locator/Locater, Inc.  (B.D.I. 2910). The

request to introduce additional evidence was denied by the Bankruptcy Court.  (B.D.I. 2958).

    **B.**    **The 2019 Complaint and 2020 Order**

      On September 25, 2019, seven months after denial of certiorari, Appellant filed the 2019

Complaint in the Bankruptcy Court, restating claims for the same relief based upon Appellant's

pre-Effective Date interests in the same mineral royalty lease and the same tracts of land that

were the subject of her previously adjudicated claims, and alleging again that the same post-

judgment evidence that she previously sought to admit to the Bankruptcy Court constitutes new

4

evidence.  (*See generally* 2019 Complaint).  The 2019 Complaint alleges that the Debtors failed to provide accurate information regarding Appellant's royalty interests, and seeks to "recover money (unpaid royalties, back pay), due to theft of property (minerals), in the form of hydrocarbons, due to Samson Resources unfair and fraudulent leasing practices relating to the Parker Heirs' mineral interest in wells Samson Resources operated from the year 2000 through September 29, 2017" (2019 Complaint at ¶ 1), along with fees and costs allegedly incurred in connection with the prior action.  Appellant summarized the nature of the 2019 Complaint:

> The Confirmation of Samson Resources Global Chapter 11 Bankruptcy permitted Samson Resources, the Reorganized Debtors, to conduct business as usual.  It perpetuated the fraud committed by Samson against the plaintiff as a Parker Heir, validated Samson's unfair leasing practices and hindered plaintiff's ability to recover unpaid royalties from theft of plaintiff's property.
>
> It is clear, by Judge Shannon's [2017] Opinion and Order; he chose to dismiss the full history of this case  He did not consider ALL the evidence presented in this case and did not uphold the laws, Texas Resources Codes governing the states allegations and issues (BNC Transcript Court Call Feb. 12, 2016, BNC Transcript Hearing October 17, 2016, BNC Transcript May 1 and 2, 2017) which denied Plaintiffs ability to recover unpaid royalties and monies rightfully due her.

(D.I. 1-1 (quoting 2019 Complaint at 28)).

In response, Samson moved to dismiss the 2019 Complaint (Adv. D.I. 4, 5).  Samson argued that the 2019 Complaint alleged the same claims already decided by the Bankruptcy Court in the 2017 Decision, and that the 2019 Complaint should be dismissed under the doctrines of res judicata, collateral estoppel, and the law of the case.  Samson further asserted that the claims raised in the 2019 Complaint are based on prepetition conduct and are discharged and enjoined by the Plan and the Confirmation Order.  In her response to the Motion to Dismiss, Appellant asserted that the 2017 Decision is not valid and "should not remain as is."  (Adv. D.I. 8 at 10).  Among other things, Appellant asserted that the transcripts of the trial contain misrepresentations and misstatements.  Appellant further asserted that the Bankruptcy Court

disregarded Texas state law and ignored evidence presented by the Parker Heirs.  Finally,

Appellant asserted that the post-confirmation Default Judgment against National

Locator/Locater, Inc. impacts the Parker Heirs' rights against the Debtors.

After further briefing by Appellant and Samson, the Bankruptcy Court issued the 2020

Order granting Samson's Motion to Dismiss the 2019 Complaint.  The Bankruptcy Court held

that collateral estoppel and res judicata barred Appellant's claims, and that the plan injunction

also enjoined Appellant from pursuing these claims.  (*See* D.I. 1-1 at ¶¶ 27, 31, 37).

Appellant filed a timely notice of appeal on May 29, 2020.  (D.I. 1).  Appellant did not

file a designation of record or statement of issues on appeal within the fourteen-day period

required under the rules.  The motion to dismiss is fully briefed.  (D.I. 9, 17, 20).  The merits of

the appeal have been fully briefed.  (D.I. 8, 19, 25).  The Court did not hear oral argument

because oral argument would not be helpful.

## III.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy

Court pursuant to 28 U.S.C. § 158(a)(1).  "On appeal from an order issued by the Bankruptcy

Court, the Court 'review[s] the Bankruptcy Court's legal determinations *de novo*, its factual

findings for clear error and its exercise of discretion for abuse thereof.'"  *In re Energy Future*

*Holdings Corp.*, 558 B.R. 684, 686 (D. Del. 2016) (quoting *In re Trans World Airlines, Inc.*, 145

F.3d 124, 131 (3d Cir. 1998)).

## IV.    DISCUSSION

Samson moves to dismiss the appeal as frivolous pursuant to Bankruptcy Rule 8003(a)(2)

and the Court's inherent authority.  Samson argues that Appellant has failed to comply with

Bankruptcy Rule 8009 (*see* D.I. 9 at 6-9) and that the appeal "lacks an arguable basis either in

law or in fact" (*see id*. at 9-11).  Samson further asserts that the appeal fails on its merits.  (*See*

D.I. 19).

### A.      Appellant Failed to Comply with Bankruptcy Rule 8009

Pursuant to Bankruptcy Rule 8009, "The appellant must file … a designation of the items to be included in the record on appeal and a statement of the issues to be presented."  FED. R. BANKR. P. 8009.  Filing these items is mandatory because the failure to provide this basic information is prejudicial to the appellee.  *See Moore v. Accredited Home Lenders Holding Co. (In re Accredited Home Lenders Holding Co.)*, 2012 WL 868689, at *6 (D. Del. Mar. 14, 2012) ("The delay in failing to file a designation of the items to be included on the record on appeal and a statement of the issues to be presented has caused . . . prejudice to the debtors.").  An appellee is entitled to know what documents the appellant believes are relevant and what issues the appellant intends to present to the court.  *See Miller v. Tate (In re Miller)*, 2018 WL 6681202, at *1 (W.D.N.C. Dec. 19, 2018) (finding that filing the designation of record is "essential to presenting the salient issues and facts … for review.").  This also gives the appellee a fair opportunity to assess the issues that the appellant intends to argue and to determine what documents the appellee believes are relevant to those issues.  *Barker v. Educ. Credit Mgmt. Corp.*, 2008 WL 754095, at *4 (S.D. Ill. Mar. 18, 2008) (refusing to consider untimely filed designation of record because the opposing party "had no opportunity" to address the documents therein); *In re Prommis Holdings LLC Tidwell v. JPMorgan Chase Bank, N.A.*, 2015 WL 13450202, at *2 (D. Del. Dec. 14, 2015), *aff'd sub nom. In re Prommis Holdings, LLC*, 665 F. App'x 238 (3d Cir. 2016) ("Appellees are unable to address the merits of the case without a clear statement of the issues to be briefed or the record upon which that brief will be based").

Appellant failed to file either the designation of record or the statement of issues to be presented on appeal within fourteen days as required under Bankruptcy Rule 8009(a)(1)(B).  The statement of issues on appeal was filed on September 15, 2020 (D.I. 16) – approximately one

7

month *after* her opening brief, which was filed on August 17, 2020.  Appellant argues that she

was unaware of this requirement and has since remedied the defect.  (D.I. 17 at 2).  The

statement lists numerous issues on appeal that were not mentioned in Appellant's opening brief,

and was filed one day prior to the deadline for Samson to file its answering brief on the merits.

(*See* D.I. 7).  Appellant's failure to comply with Bankruptcy Rule 8009 has prejudiced Samson.

In drafting its answering brief, Samson was required to expend its resources attempting to piece

together Appellant's legal theories and alleged legal and factual support.

    Parties who choose to proceed *pro se* are not excused from complying with the rules.

*See, e.g., Edwards v. Gahm*, 800 F. App'x 149, 150 (3d Cir. 2020) (finding that parties

proceeding *pro se* "must abide by the same rules that apply to all other litigants.") (internal

quotation marks omitted); *In re Coats-Califf*, 2020 WL 257315, at *6 (Bankr. D. S.C. Jan. 8,

2020) (noting that parties proceeding *pro se* still must abide by applicable deadlines and citing

*McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural

rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who

proceed without counsel.")).

    To the extent the statement of issues lists issues that were not argued in Appellant's

Opening Brief, those issues are waived.

### B.     Frivolity

    Since the Court is affirming the decision of the Bankruptcy Court on the merits, the Court

does not need to decide the motion to dismiss the appeal as frivolous.  That motion is dismissed

as moot.

### C.     The Merits

#### 1.     The Bankruptcy Court's Findings Were Not Clearly Erroneous

The Bankruptcy Court's finding that the facts and theories asserted in the 2019

Complaint are the same as those that Appellant raised in connection with her claim, and that the

Bankruptcy Court addressed in the 2017 Decision, is not clearly erroneous.  The Bankruptcy

Court matched each issue raised in the 2019 Complaint to the same issue raised in the claim

litigation and adjudicated in the 2017 Decision.  (*See* 2020 Decision ¶¶ 26-27).  Appellant does

not dispute that any of the facts relied upon by the Bankruptcy Court in dismissing the 2019

complaint were not the subject of the Bankruptcy Court's earlier consideration during its

adjudication of the Parker Heir Claims.  Instead, Appellant disputes whether those earlier

findings of fact were correct and contests that the Bankruptcy Court either "ignored" or did not

give appropriate weight to the facts and theories that she had presented.  Appellant argues that "it

continues to be Manifestly [unjust] that Samson has prevailed in their continued misconduct,

neglect, blatant disregard for the law, fraudulent activities when appellant **has proven** [Samson]

did not have a lease on file, provide that lease when requested, pay correct royalties, pay correct

back pay, cause all the other oil and gas operators in the 702.9 pooled unit to pay the royalties

due the Parkers or even conduct proper title work concerning the wells they operated involving

the Booth Freeman Unit."  (D.I. 17 at 2) (emphasis in original).

The Bankruptcy Court found that Appellant's claims in the 2019 Complaint, alleging that

"the Debtors were negligent and violated Texas law by failing to provide certain information to

the Parker Heirs" were litigated, considered and decided upon in the 2017 Decision.  (*See* 2020

Decision ¶ 26(a); 2019 Complaint at 28-32; Proof of Claim No. 1481, 2687).  This finding is not

clearly erroneous because the Parker Heirs accused the Debtors of being "not truthful" and

inconsistent in their response to the Debtors' omnibus objection to their claims.  (*See* B.D.I.

2045).  Furthermore, the Bankruptcy Court considered this issue in the 2017 Decision.  *See*

*Samson*, 569 B.R.at 618 n. 58 ("Many of the factual disputes between the parties derive from

miscommunications, and the Debtors' unresponsiveness to the Parker Heirs' inquiries both prior

to and during these cases, including providing maps without differentiating various ownership of wells.")  Accordingly, the Bankruptcy Court properly found that Appellant's prior allegations and theories and the 2017 Decision addressed Appellant's claims that the Debtors were negligent and violated Texas law.

The Bankruptcy Court also found Appellant's claim "that the Debtors failed to pay certain royalties based on the Booth Freeman Well 1" was "extensively discussed" in the 2017 Decision.  (*See* 2020 Decision ¶ 26(b); 2019 Complaint at 29-36).  The Parker Heirs presented this issue to the Bankruptcy Court prior to, and during, the hearing on the claims.  (*See* B.D.I. 2162 (arguing that the Debtors have not paid the Parker Heirs the royalties due to them under the Booth-Freeman Wells); B.D.I. 2311 at 3-6 (same); B.D.I 2352, 5/2/2017 Hr'g Tr.).  Indeed, the Bankruptcy Court dedicated much of the 2017 Decision to analyzing the Parker Heirs' interests in the Booth-Freeman Unit and the evidence presented with respect thereto.  *See Samson*, 569 B.R. at  610-13, 616-21, 623-24.  Therefore, the Bankruptcy Court's finding that Appellant's claims regarding royalty payments based on the Booth Freeman Wells were already addressed in the 2017 Decision is not clearly erroneous.

The Bankruptcy Court similarly found that Appellant's other claims related to royalty fees arising from late fees, penalties or other reasons were addressed in the 2017 Decision.  (*See* 2020 Decision ¶ 26(c); 2019 Complaint at 31-39).  This finding is not clearly erroneous because the Parker Heirs made numerous assertions that they were entitled to royalty payments.  (*See* B.D.I. 1953 at 10-11 (stating that Samson did not pay the Parker Heirs their "just due royalties" because Samson has not done the "necessary title work or surveys to justify the interest . . . of the Parker Heirs"); B.D.I. 2045 at 1-3 (stating that Samson has profited off the Parker Heirs' land without a lease and accordingly owe royalty payments thereon).)  The 2017 Decision addressed each of these royalty payment claims.  *See Samson*, 569 B.R. at  620-24.  Therefore, I will not

disturb the Bankruptcy Court's finding that Appellant's requests for royalty payments have already been raised and ruled upon.

The Bankruptcy Court further found that Appellant's claims alleging that the Debtors engaged in "faulty title searches and review, which [allegedly] resulted in violations of the Texas Code, obstruction of the Parker Heirs' efforts to confirm their interests in land, and failure to recognize the Parker Heirs' interests in certain tracts of land" were raised in the 2017 Decision. (*See* 2020 Decision ¶ 26(e); 2019 Complaint at 39-45). The 2017 Decision provided a lengthy analysis of title ownership under the Walling Lease and determined that the Debtors did not owe the Parker Heirs a larger royalty payment and that Pat Walling is not the same person as Pat Waldron. *See Samson*, 569 B.R. at 616-21. Moreover, the Parker Heirs raised these issues in their briefing. (*See* B.D.I. 2024 (alleging that the Debtors had been "operating on Walling land without a valid Oil and Gas Lease" and that "they did not establish the ownership of the John Walling or Pat Waldon/Walling Estate . . . .").).

The 2017 Decision also ruled upon and denied Appellant's purported interest in additional mineral royalty rights that had been sold by her grandfather prior to her inheritance. *See Samson*, 569 B.R. at 621-24. The Bankruptcy Court found that Mr. Randolph Parker, Appellant's grandfather, executed a warranty deed to National Locater conveying half of his mineral royalty interest. *Id*. at 621-22. The Bankruptcy Court held that the Debtors had complied with the terms of that royalty transfer. *Id* at 622. In addition, the Bankruptcy Court held that under controlling Texas law, a Division Order that is executed by an interest holder is binding on that interest holder, and that Appellant and the other Parker Heirs had executed Division Orders affirming their mineral royalty interests. *Id*. at 619-21. Those Division Orders did not include any of the additional mineral interests that Appellant claims. *See id*. Accordingly, the Bankruptcy Court held that the Division Orders were binding on the Parker

Heirs, including Appellant, and that Samson had made all payments as required under those orders. *Id.* at 621, 624. These findings of fact are not clearly erroneous.

Finally, the Bankruptcy Court correctly found that Appellant expressly seeks to *relitigate* claims that were already decided in the 2017 Decision, as the 2019 Complaint "*re-alleges* [t]here was no cooperation from the Debtors … to resolve any issues with the Parkers," and asks the Bankruptcy Court to "*reverse* Judge Shannon's validation of the Callie Morrison Lease," to "*re-examine* her claims" in light of the Debtors' history of fraud. (*See* 2020 Decision ¶¶ 26(e)-(f); 2019 Complaint at 44-45).

### 2. Appellant's New Evidence Argument is Unavailing

Appellant does not refute that the Bankruptcy Court made the factual findings above. Notwithstanding, Appellant's assertion that the 2019 Complaint relies on "new evidence" is unavailing. Appellant's statement that the Bankruptcy Court ignored the default judgment is also unsupported by the record. (*See* D.I. 8 at 9-10).

As Appellant states, she sought to admit the default judgment as "new evidence" while appeal of the 2017 Decision remained pending in the Third Circuit. (*See id.* at 11-12; B.D.I. 2910). Appellant further sought relief in the form of a "lien and asset freeze" on the basis of the default judgment. (B.D.I. 2934). The Bankruptcy Court's order denying that request reflects its determination that Appellant "had a full and fair opportunity to present evidence at the trial held on May 1 and 2, 2017," and that "[n]o additional evidence related to the Parker Heirs Claims will be considered by the Court." (B.D.I. 2958 at 2).[2] Because Appellant never appealed that order,

---

[2] *See also* B.D.I. 2958 at n.4 (citing *Madison Foods, Inc. v. Fleming Companies, Inc. (In re Fleming Companies, Inc.)*, 2005 WL 1115912, at *1 (Bankr. D. Del. May 10, 2005)). *Madison Foods* noted, "Under Rule 9023 of the Federal Rule of Bankruptcy Procedure, a court may reconsider a ruling if the moving party can establish one of three major grounds: (1) an intervening change in controlling law, (2) the availability of new evidence [*not available*

it is final.

The issues Appellant alleges to have occurred with the purchaser after Samson's sale of the mineral royalty lease in which she claims an interest are irrelevant.  (*See* D.I. 8 at 8-12).  As Samson correctly argues, Samson bears no responsibility for the purchaser's actions.  In addition, the Bankruptcy Court already determined that Samson was not responsible for any payment to Appellant on account of her asserted additional mineral royalty interests and that Samson had made all payments required under the applicable Division Order with Appellant.  *Samson,* 569 B.R. at 621, 624.

Appellant's argument that the Bankruptcy Court "omitted" an aspect of the relief she seeks is incorrect.  (D.I. 8 at 8).  Appellant asserts that the Bankruptcy Court ignored her claim "to determine the validity, priority, or extent of a lien or other interest in property due to Samson Resources negligence and failure to complete proper title work concerning the Parker Heir's mineral interest in the same wells," but the Bankruptcy Court has now ruled on this issue twice. *See Samson,* 569 B.R. at 616-21; 2020 Decision ¶¶ 26, 30-31.  The factual findings of the Bankruptcy Court are "plausible in light of the record viewed in its entirety" and the Court finds no basis to disturb them.  *In re Memorex Telex Corp*., 242 B.R. at 832-33.

### 3. The Appeal Identifies No Legal Error in the Bankruptcy Court's Application of Collateral Estoppel, Res Judicata, or the Plan Injunction to the Claims Set Forth in the 2019 Complaint

The Bankruptcy Court applied the doctrine of issue preclusion or collateral estoppel, which "prevents parties from relitigating an issue that has already been actually litigated."  *See Peloro v. U.S.*, 488 F.3d 163, 174–75 (3d Cir. 2007).  The Bankruptcy Court noted, "Issues are identical for collateral estoppel purposes where "the issues presented by [the current] litigation

---

*previously*]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice." (internal citations and quotations omitted) (emphasis added).

are in substance the same as those resolved in the previous litigation."  (D.I. 1-1 at 8 (quoting

*National Medical Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x. 251, 256, 2016 WL

1743475, at *5 (3d Cir. 2016) (internal quotations omitted)).  Based on a careful claim-by-claim

analysis of the 2019 Complaint, the Bankruptcy Court determined, "The claims raised in the

2019 Complaint are the same as those litigated, considered, and decided in the 2017 Decision on

the Claim Objection."  (*See* D.I. 1-1 at 9-11, ¶¶ 26-27).  Specifically, the Bankruptcy Court

determined:

    a.    The First and Third Claims for Relief in the 2019 Complaint allege that the Debtors were negligent and violated Texas law by failing to provide certain information to the Parker Heirs.  In deciding the Claim Objection, the Court recognized that "[m]any of the factual disputes between the parties derive from miscommunications, and the Debtors' unresponsiveness to the Parker Heirs' inquiries both prior to and during this case, including providing maps without differentiating various ownership of wells."

    b.    The Second and Fifth Claims for Relief in the 2019 Complaint allege that the Debtors failed to pay certain royalties based on the Booth Freeman Well 1.  The 2017 Decision extensively discussed the Parker Heirs' interests, rights and amounts owed in connection with Booth Freeman Unit.

    c.    The Fourth and Eighth Claims for Relief assert that the Parker Heirs were entitled to late fees, penalties, or other relief due to the Debtors' withholding or late payment of amounts owing to the Parker Heirs.  The 2017 Decision concluded that the Parker Heirs were bound by certain Division Orders, which calculated the Parker Heirs' claims, and that the Debtors have "fully and properly paid the Parker Heirs for their fractional royalty interest."

    d.    The Sixth and Seventh Claims for Relief assert that the Parker Heirs are owed unpaid royalties due to National Locater, and that the Debtors either failed to pay those royalties or wrongfully paid those monies to the Texas Comptroller.  The 2017 Decision discussed the transfer of royalty interests to National Locater and determined that the Debtors had complied with the terms of that transfer.

    e.    The Ninth through Twelfth Claims in the 2019 Complaint assert claims related to the Debtors' allegedly faulty title searches and reviews, which, the Complaint alleges, resulted in violations of the Texas Code, obstruction of the Parker Heirs' efforts to confirm their interests in land,  and failure to recognize the Parker Heirs' interests in certain tracts of land.  The 2017 Decision already examined and determined the title issues, including those revolving around the Pat Walling/Pat Waldron issue and Callie Morrison lease.  Moreover, the Debtors point out that the language in the 2019 Complaint specifically recognizes that it is seeking to relitigate claims, since the Eleventh claim asks the Court to "reverse Judge Shannon's validation of the Callie

Morrison Lease" and the Twelfth Claim "re-alleges [t]here was no cooperation from the Debtors … to resolve any issues with the Parkers."

f.    The Thirteenth Claim for Relief asserts that the Debtors have a history of fraud and notes that other claimants successfully litigated claims against the Debtors  In this claim, Ms. Jones asks the Court to "re-examine her claims" in light of such information, and she realleges many of the allegations contained in the previous claims. For the same reasons discussed in relation to the previous Claims for Relief, the Parker Heirs' fraud allegations against the Debtors regarding their right to royalties and interest in properties and leases  have been decided in the 2017 Decision.

(D.I. 1-1 at 9-11) (footnotes and citations omitted).

Following this careful analysis, the Bankruptcy Court concluded that the claims in the 2019 Complaint were the same as those asserted in the Claim Objection litigation.  (*See id.* at 11). "Those claims were actually litigated; were determined by a final judgment; and the determination of those issues was essential to the prior judgment in the 2017 Decision.  The claims in the 2019 Complaint are barred by collateral estoppel."  (*Id.*)

Appellant identifies no legal error in the Bankruptcy Court's application of collateral estoppel.  Even construing her pleadings liberally, Appellant's opening brief confirms that the 2019 Complaint seeks to re-litigate the claims previously presented to the Bankruptcy Court. The Court reviews conclusions of law *de novo*.  That said, as Samson correctly points out, an appellate court "is not required to manufacture an appellant's 'argument on appeal when it has failed in its burden to draw [] attention to the error below.'"  *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995) (citation omitted).  Indeed, an appellant who does not present an argument on an issue in his or her opening brief "has abandoned and waived that issue on appeal." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *see also Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal") (citations omitted).

15

To the extent that Appellant's brief can be read to address the Bankruptcy Court's application of collateral estoppel, it contains no legal authority in support thereof.   (D.I. 8 at 10-12).   Instead, Appellant simply refers to her post-judgment default judgment in Texas and the issues that she alleges to have with the purchaser after Samson's sale of the lease.   (*Id.* at 8-12). Nowhere in this discussion does Appellant present any legal authority challenging the Bankruptcy Court's determination that her claims are barred by collateral estoppel.   The appeal identifies no legal basis to disturb the Bankruptcy Court's determination that claims asserted in the 2019 Complaint may not be relitigated.

Nor does the appeal identify any error in the Bankruptcy Court's application of the doctrine of res judicata.   The doctrine of res judicata (a/k/a/ claim preclusion) serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and ... promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).   "Claim preclusion … gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding" and "requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action."   *Recovery Fund II USA LLC v. Rabobank, N.A.*, 2020 WL 509166, *5 (D. Del. Jan. 31, 2020) (quoting *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). "In determining whether a later civil suit is 'based on the same cause of action' … the Third Circuit instructs courts to consider 'the totality of the circumstances' in each proceeding and determine 'whether there is an essential similarity of the underlying events.'"   *Recovery Fund II,* 2020 WL 509166, *5 (quoting *CoreStates Bank, N.A. v. Huls Am., Inc*., 176 F.3d 187, 194 (3d Cir. 1999)).   The "nature of the action," as stated in the first paragraph of the 2019 Complaint, is that Appellant:

seeks to recover money (unpaid royalties, back pay), due to theft of property (minerals), in the form of hydrocarbons, due to Samson Resources' unfair and fraudulent leasing practices relating to the Parker Heirs mineral interest in wells Samson Resources operated from the year 2000 thru September 29, 2017.  Plaintiff also files this complaint/ proceeding to determine the validity, priority, or extent of a lien or other interest in property due to Samson Resources negligence and failure to complete proper title work concerning the Parker Heirs mineral interest in the same wells.

(2019 Complaint, ¶ 1).  The Bankruptcy Court concluded, "The claims asserted in the 2019 Complaint are the based on the same allegations in the Parker Heir Claims relating to the Debtors' failure to properly pay royalties or to recognize the Parker Heirs' interest in lands or leases.  Ms. Jones appeared at the trial on May 1 and 2, 2017 to litigate those claims.   The Court's 2017 Decision is a final decision on those claims.  Res judicata applies here and bars relitigation of the claims in the 2019 Complaint."  (D.I. 1-1 at 13).   Appellant's only reference to res judicata is her conclusory statement, "Res Judicata has already been addressed by appellant." (D.I. 8 at 14).  The appeal identifies no legal basis to disturb the Bankruptcy Court's determination that res judicata applies to bar the claims asserted in the 2019 Complaint.

Finally, the Bankruptcy Court considered Samson's argument that the plan prevents Appellant from asserting pre-Effective Date claims.  (D.I. 1-1 at 13-14).  The plan states:

> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, ***discharge***, and release, effective as of (a) the Initial Effective Date, with respect to General Unsecured Claims, or (b) otherwise, the Final Effective Date, of Claims … Interests, and Causes of Action of any nature whatsoever… ***that arose before the Final Effective Date.***

> Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to [the Plan]… [or] discharged pursuant to [the Plan] … ***are permanently enjoined***, from and after the Initial Effective Date, from taking any of the following actions against, as applicable, the Debtors …: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests ….

(Plan, at Art. VIII.B, VIII.H (emphasis added)).  The Confirmation Order "approved and

authorized in their entirety" the "discharge, injunction and related provisions set forth in Article VIII of the Plan." (*See* Confirmation Order at ¶ 98). In the 2017 Decision, the Bankruptcy Court disallowed the Parker Heir Claims seeking payment of those pre-Effective Date royalty payments. The Bankruptcy Court found that the 2019 Complaint "seek[s] recovery of pre-effective date royalty payments allegedly owed to Ms. Jones" and therefore is enjoined by Samson's Plan and Confirmation Order. (2020 Decision ¶¶ 35-36).

Appellant identifies no legal error in the Bankruptcy Court's application of the plan injunction. Appellant asserts that the plan injunction does not apply because her original claims were priority claims, and then alleges that the Debtors' plan did not release claims arising from fraud, gross negligence, or willful misconduct. (*See* D.I. 8 at 14-15). Appellant fails, however, to make any factual connection between these assertions and the Bankruptcy Court's application of the plan injunction, and further fails to provide any legal authority in support. (*See id.*) The discharge and injunction provisions of the Debtors' Plan contain no such limitation. (*See* Plan Art. VIII B, H). The Debtor releases reflected in the Plan and quoted by Appellant are not at issue here – rather, the Plan discharge and injunction are at issue. (*See* 2020 Decision ¶ 14). Neither the discharge nor the plan injunction except claims for fraud or negligence. (*See* Plan Art. VIII B, H). Accordingly, the Bankruptcy Court properly held that "the Plan Injunction enjoins Ms. Jones from pursuing the claims in the [2019 Complaint]." (2020 Decision ¶ 37).

### 4. The Remaining Issues to Be Presented on Appeal Are Unsupported or Otherwise Unavailing

Appellant's statement of issues to be presented on appeal, filed one month after her opening brief, lists numerous issues that find no support in the briefing. They are waived. Alternatively, I will review them.

As a first issue on appeal, Appellant asserts that, pursuant to Bankruptcy Rule 7001, she

18

"had the right to file a the [2019] complaint" and thus (presumably) dismissal was erroneous. (D.I. 16 at 1). That Bankruptcy Rule 7001 permits the filing of a complaint, however, does not mean that the complaint is not subject to dismissal for failing to state a claim. The 2019 Complaint was subject to the jurisdiction of the Bankruptcy Court and application of Bankruptcy Rule 7012(b). *See* FED. R. BANKR. P. 7001. The Bankruptcy Court appropriately exercised its jurisdiction to dismiss the 2019 Complaint for its failure to state a claim. *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) ("although issue preclusion is an affirmative defense, it may be raised in a motion to dismiss") (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972)).

As a second issue on appeal, Appellant asserts, "Samson did not object to appellant's proof of claim until after they had the Plan confirmed." (D.I. 16 at 1). The timing of a debtor's objection to a proof of claim, however, has no bearing on the merits of that claim. Samson was authorized under the Plan to object to certain claims, including Appellant's claim, and it did so. (*See* Plan Art. XI; Debtors' Amended Second Omnibus (Substantive) Claims Objection (B.D.I. 2015, 2060)). The timing issue raised by Appellant provides no basis to disturb the Bankruptcy Court's prior ruling that Appellant holds no claims against the Debtors.

As a third issue on appeal, Appellant asserts, "Judge Shannon refused to consider new evidence that reveal Samson's continued wrong and Default Judgment submitted with Complaint." (D.I. 16 at 1). As Appellant's brief makes clear, however, the "new" evidence in the 2019 Complaint is the same "new evidence and a Default Judgment" that she previously sought to admit in the Bankruptcy Court. The Bankruptcy Court denied Appellant's request, and that denial is a final order. The continuing harm doctrine does not apply here. The Bankruptcy Court already has held that there was no fraud, theft, or violation of any Texas statutes, that Appellant held no interest in the partial mineral royalty that her grandfather sold in 1987, and

that Appellant was bound by the Division Order.  Appellant holds no claims under the continuing harm theory or any of the other theories reasserted in the 2019 Complaint.

As a fourth issue on appeal, Appellant lists conclusions contained in the 2017 Decision which are presumably erroneous because the Bankruptcy Court "failed to acknowledge" or "ignored" certain arguments.  (D.I. 16 at 1-2).  Each ruling was presented, considered, and ruled upon in the 2017 Decision.  This issue is an admission that the claims asserted in the 2019 Complaint already have been adjudicated, as it directly refers to those earlier determinations.

As the fifth and seventh issues on appeal, Appellant asserts, the "Plan provides an exception to release of Debtor from claims or causes of Action set forth based on any act or omissions that constitute fraud, gross negligence or willful misconduct," and the Bankruptcy Court "ignored Samson's history of fraud not only with the Parkers but with other landowners in the past and the current allegations of fraudulent transfers from the Settlement Trust Committee regarding the associated Chapter 11 Bankruptcy." (D.I. 16 at 3).  Appellant's fraud allegations against the Debtors regarding their right to royalties and interest in properties and leases were decided in the 2017 Decision.  Moreover, Samson has not argued that it was released; rather, Samson relies on the plan's discharge provision, which discharges "all Claims … Interests, and Causes of Action of any nature whatsoever… that arose before the Final Effective Date."  The release provides no basis to relitigate the claims contained in the 2019 Complaint.

As a sixth issue on appeal, Appellant asserts that Samson erred in classifying her proof of claim as a general unsecured claim but provides no legal support that her claim should have been treated as a priority claim.  (*See* D.I. 16 at 2).  "The issue of the classification or priority of the Parker Heir Claims was held in abeyance until the Court determines the validity and amount, if any, of each of the Parker Heir Claims." *Samson*, 569 B.R. at 610.  The Bankruptcy Court concluded that the Parker Heirs established no valid claims against the Debtors, so classification

under the plan has no bearing on this appeal.  Appellant's brief offers no legal or factual basis to

conclude that the claims asserted in the 2019 Complaint should be relitigated.[3]

## V.      CONCLUSION

The appeal has prejudiced Samson in that Appellant failed to comply with the

Bankruptcy Rules and timely identify the issues to be presented on appeal.  The appeal fails on

the merits.  Accordingly, the 2020 Order will be affirmed.

A separate order will be entered.

---

[3] Appellant requests that this Court consider a motion in the adversary proceeding below to join Darrell Parker as a plaintiff.  (*See* D.I. 8 at 20).  Darrell Parker did not file a motion to intervene in the adversary proceeding.  Appellant filed the motion, but Appellant is not an attorney and thus cannot represent others before the Bankruptcy Court.  *See Osei-Afriyie v. Medical College of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991); *Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist.,* 409 F.3d 753, 755 (6th Cir. 2005).  Accordingly, Appellant's motion is denied.